959 F.2d 242
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Margaret CARLSON, Defendant-Appellant.
 No. 90-10465.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1991.
Decided April 2, 1992.
 
 Before TANG, PREGERSON and BOOCHEVER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Margaret Carlson appeals her convictions for possessing and manufacturing marijuana in violation of 21 U.S.C. § 844(a) and § 841(a)(1) respectively.[1] Her jury conviction on the possession count was as a lesser included offense on a charge of possessing marijuana with intent to distribute. At trial, the judge refused to instruct the jury that Carlson's religious use of marijuana was a complete defense to the marijuana charges. He did allow her to introduce evidence about religious sacramental and medicinal use to prove that she intended the marijuana for personal use rather than for distribution.
 
 
 3
 Carlson presented evidence that her family had traditionally been involved with Yurok medicine and religious ceremonies and that she is an American Indian doctor. Evidence was introduced that marijuana is considered sacred in some American Indian religions, being used for prayer and healing. The ceremonial use of marijuana is a central precept of the Yurok religion. Blue Creek, where the marijuana gardens were found, is considered sacred ground.
 
 
 4
 The government later filed a one-count superseding information recharging Carlson with manufacturing marijuana after the jury was unable to reach a verdict on that count. She pleaded guilty, reserving her right to appeal the district court's refusal to give the instruction on religious use.
 
 
 5
 Carlson claims that the district court violated her free exercise and equal protection-establishment clause rights by refusing to instruct the jury that her religious use of marijuana is a complete defense to the marijuana charges. Because there is no basis in statutory or case law to support her requested instruction, we affirm.
 
 I. FREE EXERCISE CLAUSE
 
 6
 Carlson contends that the laws under which she was prosecuted unduly burdened the free exercise of her religion by prohibiting conduct that is a central part of her religion. Carlson's argument is foreclosed by the United States Supreme Court's decision in Employment Div. Dept. of Human Resources v. Smith, 494 U.S. 872 (1990). In Smith, the Supreme Court held that the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral criminal law of general applicability on the ground that the law proscribes or requires conduct that is contrary to that individual's religious practice. Id. at 876-82.
 
 
 7
 The federal laws prohibiting the possession, distribution, and manufacture of marijuana are generally applicable criminal laws and are not specifically directed to religious practice. Thus, Carlson's religious beliefs do not entitle her to an instruction that religious use of marijuana is a defense to the charges of possessing and manufacturing marijuana.
 
 
 8
 Carlson's attempts to distinguish her case from Smith are unpersuasive. She first claims that in contrast to Oregon law, which did not provide an exemption for the religious use of peyote, federal law exempts the religious use of marijuana. She cites to the American Indian Religious Freedom Act, 42 U.S.C. § 1996. The Act, however, does not specifically provide an exemption from criminal laws for the use of marijuana in sacred ceremonies. It expresses the federal policy to protect and preserve for Native Americans their inherent right of freedom of religion. In Lyng v. Northwest Indian Cemetery Protection Ass'n, 485 U.S. 439, 454-55 (1988), the Supreme Court held that 42 U.S.C. § 1996 was not violated by the destruction of American Indian sacred lands that were an integral and essential part of the religious rituals and ceremonies of three American Indian tribes. Similarly, the Act is not violated by the imposition of penalties for the violation of criminal laws that proscribe conduct central to the Yurok religion.
 
 
 9
 The present case cannot be distinguished from Smith on the basis that it dealt with the denial of unemployment benefits. The Supreme Court's opinion in Smith is premised on the fact that Oregon did not exempt the sacred use of peyote from the proscriptions of its criminal law. That a state can exempt certain religious practices from generally applicable laws, does not mean that it is unconstitutional not to do so. Smith, 494 U.S. at 890. Accordingly, the federal government's failure to provide an exemption for the sacred use of marijuana is not a violation of the free exercise clause.
 
 
 10
 Carlson also tries to distinguish her case from Olsen v. Drug Enforcement Administration, 878 F.2d 1458, 1463 (D.C.Cir.1989), which held that the religious use of marijuana by the Ethiopian Zion Coptic Church was not exempt from federal drug laws. She urges us to consider the difference between the use of marijuana by the Ethiopian Zion Coptic Church and by the Yurok Indian tribe. While there are differences in the rituals and amount of marijuana used for religious purposes by each group, the court in Olsen based its decision on the immensity of the marijuana control problem in the United States. Id. at 1464. Therefore, we find that Carlson's attempt to distinguish Olsen is misplaced.
 
 
 11
 Finally, Carlson seeks to persuade us to apply the three-prong balancing test originated in Sherbert v. Verner, 374 U.S. 398, 402-03, (1963). However, Smith expressly held that the test is inapplicable in a free exercise challenge to an across-the-board criminal prohibition on a particular form of conduct. Smith, 494 U.S. at 883-90.
 
 
 12
 Accordingly, Carlson's free exercise claim must fail. She is not entitled to an instruction that her religious use of marijuana is a defense to her criminal charges under the free exercise clause.
 
 II. EQUAL PROTECTION-ESTABLISHMENT CLAUSES
 
 13
 Carlson also claims that by permitting the Native American Church to make sacramental use of peyote, the federal government has engaged in denominational preferences that violate her rights under the equal protection and establishment clauses. See 21 C.F.R. § 1307.31. Federal law does not grant the Yuroks a similar accommodation with respect to marijuana. Thus, Carlson argues that unless the government can show a compelling interest justifying the disparate treatment, the preference in favor of the Native American Church violates the equal protection clause and constitutes an establishment of religion.
 
 
 14
 At oral argument, counsel for Carlson contended that this claim takes her case outside of the holding in Smith because it constitutes a "hybrid" claim. The "hybrid" claims discussed in Smith involved "express constitutional protections such as freedom of speech, and firmly recognized substantive due process rights such as the privacy right in rearing children." American Friends Service Committee v. Thornburgh, 951 F.2d 957, 960-61 (9th Cir.1991) (rejecting attempt to characterize Lochner-style "right to hire" claim as hybrid). It is questionable whether an equal protection claim can satisfy the hybrid claim requirements of Smith.
 
 
 15
 Even if this were a "hybrid" claim, however, Carlson would fare no better. Her claim would be subject to the balancing test of Sherbert v. Verner, 374 U.S. 398, 402-03 (1963). Under this test, no free exercise challenge involving marijuana use has ever prevailed. See Smith, 494 U.S. at 917 n. 8 (Blackmun, J., dissenting) (citing cases); Olsen, 878 F.2d at 1463-64.
 
 
 16
 In support of her equal protection-establishment clause claim, Carlson argues that religious classifications are subject to strict scrutiny. See Smith, 494 U.S. at 886 n. 3. However, there is no religious classification in the statute under which Carlson was charged. Generally applicable, religion-neutral laws that have the effect of disproportionately burdening a particular religious practice need not be justified by a compelling governmental interest. Id. Acknowledging that its holding will place certain religious groups at a disadvantage, the Court in Smith held that such accommodations must be left to the political process. Id. at 890.
 
 
 17
 Even construing the statute and regulation together, the two religious groups, the Native American Church and the Yurok Indian tribe, are not similarly situated. The classification is one of drug type. Marijuana distribution in this country is a social problem of considerably more complexity and breadth than that of peyote. Because Congress could have rationally distinguished between peyote and marijuana on the basis of overwhelming control problems with marijuana distribution, there is no equal protection clause violation.
 
 
 18
 Nor is there an establishment clause violation. In enacting the regulation, the Drug Enforcement Administration was not confronted with a social problem remotely approaching that of marijuana use. The regulation therefore cannot be regarded as favoring the Native American Church over the Yurok religion in violation of the establishment clause.
 
 CONCLUSION
 
 19
 We affirm the district court's ruling that Carlson is not entitled to a freedom of religion defense. Her convictions are therefore AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Searches of Carlson's residence and surrounding property disclosed, among other things, 2 marijuana gardens, one containing at least 400 plants with an estimated market value of $100,000-$300,000, marijuana seeds, a trash bag, and other containers full of marijuana, scales, cases of ziplock baggies, pipes, and other paraphernalia